Good morning. May it please the court. I represent the plaintiffs in the underlying case. In this case, the district court held as a matter of law that a 10% liquidated damages provision contained in the contractual documents governing an ERISA multi-employer welfare benefit plan was unenforceable because that provision exacted a penalty for a late payment of contractually required contributions. The district court got there by applying what the district court euphemistically described as a principle of the federal common law. What the district court was alluding to is a rule of law that has been adopted by a number of federal courts in simple, typical, ordinary contract cases that holds that liquidated damages provisions that are penal in character are unenforceable. That's an old common law rule. It's actually embodied in a section of the restatement of contracts. It's based on years and years of state law principles that again, developed in typical, ordinary contract cases. And it's driven, interestingly enough, by an underlying policy consideration in our law of contract that in cases of breach of contract, the remedy is limited to compensatory and there ought not to be a punitive element. Hence the rule that liquidated damages provisions, even though clear and unambiguous in the contract, are legally unenforceable. Respectfully, in this case, which was brought not as an ordinary contract case, but as a contract-based action under section 301 of the Labor Management Relations Act, a very, very different policy imperative should have guided the court's formulation of the appropriate rule of federal common law. In cases going back to Teamsters versus Lucas Flower back in the 1960s before Judge Wilkinson graduated from law school, it has been clear that when a federal district court is required to apply what we refer to as federal common law, what the federal court is tasked with is divining a principle of common law that is consistent with the underlying federal policy. In a labor case brought under section 301 of the Labor Management Relations Act, in effect, what the court is tasked with doing is ascertaining what congressional policy may underlie the issue at hand. I'll admit that there are many instances where divining congressional policy is a difficult undertaking. In this case, it's not difficult at all. Congress made that very, very simple when it comes to liquidated penalties for belated contributions to employee welfare benefit plans. Isn't the question here the degree to which Congress displaced the common law? Well, absolutely. The common law has been totally displaced. Well, it's been totally displaced, maybe with respect to unpaid contributions. But the question is, has it been totally displaced with respect to contributions? It's a little bit late. I think what your honor alludes to is that the ERISA remedy that was introduced in connection with the 1980 amendments to the statute is limited to contributions that happen not to have gotten paid by the time suits filed. I won't comment on the wisdom or lack thereof in limiting the statutory remedy in that manner. But what I'm addressing is a much broader, clear, but much broader articulation of congressional policy in connection with the 1980 amendments in which it was made absolutely clear that there was concern not only about non-payment, but late payment. Counsel, doesn't the specific control the general? Well, I don't know that that doctrine of interpretation applies here. This is not necessarily a question of statutory construction. The issue here is not whether the specific statutory remedy under 502 G2 applies. This action was brought clearly under section 301. The question here is that when fashioning an appropriate common law rule, not a statutory rule, but a common law rule, should the district court have been guided? Counsel, please, if we're talking about a common law rule, isn't the common law rule what the district court set out? I'm sorry. I'm a little hard of hearing when I could not hear the end of the question. That's no problem at all, counsel. I have the same problem. I was going to say, isn't the common law rule what the district court set out? Well, I'm going to address that very thoroughly because I think that's important. What the district court was alluding to is I think what the district court perceived as a universally applicable body of common law principles, one of which was the idea that in contract cases, generally liquidated damages provisions that are too penal or unenforceable. I think that's a mistaken view. Again, this wasn't a typical contract case. This was a section 301 case. What the district court ought to have done is ask the question, what principle of law could apply here that would be consistent with federal labor policy as articulated by Congress? And I don't think that would work. Counsel, you're posing all of this at such a general level, and I don't understand why the question would not be, there is a displaced common law with respect to the unpaid contributions. And with that, you can recover up to 20% of the unpaid contributions under 502.2.2. But you can recover under common law as well. If the amount of the damages is unassertainable. But the point is, there's a difference in the statute that all the court of appeals would recognize between unpaid contributions and contributions that are late. And I don't know how that would dictate the business here, because if they're just late, you go into the common law rule, and under common law, liquidated damages are just stated and actual damages are deferred. And isn't that the way the majority of circuits have interpreted this? I mean, liquidated damages are almost, I mean, they're even more than that because they're set, but the reason that they are disfavored is because in breach of contract claims, you normally like the breaching parties to be liable for actual damages. But to say that the actual damage is maybe very nominal, but that the liquidated damages we're going to impose may be very steep, that goes against the thrust of the common law rule, which favors actual damage. But I think that the clear answer is the common law rule has to give way in the labor area. And the answer is that the specific statutory remedy under 502 G2 becomes unavailable if the payer, although way late, happens to get the check in before suits filed. That relegates the fund to a common law, not a common law, but a section 301 action for breach of contract. Now, I simply maintain that if Congress says that there is a mandatory, and I repeat, to a section 301 case where the payment, although clearly late, happens to be made before suits filed, it is incongruous in that case to say, well, not only is a liquidated, contractually mandated liquidated penalty not mandatory, but we're going to invalidate it this from the perspective that it's a 301 case, not a simple breach of contract case. The court will see that immediately. Let me add that. That seems to be your entire argument that this ERISA provision for unpaid contributions and this provision for this 20 percent liquidated damages and therefore they should be allowed, especially if they are less than 20 percent. Is that the only consideration you have of evaluating liquidated damages? Well, the ERISA provision simply is the vehicle which allows us to perceive the congressional policy. So whether the statutory provision itself is not germane because we're not operating under ERISA here. This is a section 301 case. All that the importance of the 1980 amendments is it gives us insight into Congress's thinking. And in the brief, we quote repeatedly from the congressional record when when multiple sources commented on the problem of employers not making the required promised contributions on time, not making them at all, but making them on time. And I would challenge the legislative history as opposed to what was enacted. It's of course, the legislative history. What better source would we look to define what what Congress's concerns were? It would be the statute. If we were dealing with a statutory interpretation issue, but we're not. We're dealing with a question of Congressional policy. You sure fool me. I thought we were dealing with a statutory interpretation. My apology. We're not. We're not construing 502 G2 because we brought the action under 301 and 301 simply says to the district courts or to the courts formulate appropriate rules of federal common law. Our position is that when one does that in the labor area, when we have a congressional record, like we're lucky enough to have in connection with the 1980 amendments, where multiple sources condemn the practice of employers of not paying on time, that's policy. I'm sorry. Counselor, please. Again, I get I hear myself and I can't hear anything else. It's not a problem at all. I understand completely. The problem here is that the fund, not on the basis of a negotiated settlement, but on the basis of a provision that it added without any input from these defendants. And the fund is seeking $80,000 in liquidated damages. Even though the actual harm was limited to a few lost interest payments. Now, that doesn't strike me as right in the face of a statute that did not impose these kind of draconian penalties in this kind of situation. There's going to be a lot of companies that are a little bit late with their payments. And that differentiates those companies that fail to pay at all. And you know, you're going to be only harming yourself if you clobber these companies with a huge liquidated award when your actual damage is absolutely minuscule. That doesn't end up doing this on the basis of a provision that wasn't even negotiated, that it was inserted unilaterally. I'm not going to respond based on what I think. I'm going to respond based on what Congress clearly thinks. Congress thinks that these companies need to make those payments on time. And we're not talking about with a payment that was a little bit late. We're talking about 17 payments that were late over a long period of time. And what I would suggest is if we can't, we as a fund, can't use a liquidated penalty that's harsh to get the money paid on time, what can we do? Call them on the phone, plead with them, remind them of their contractual duty. These funds don't have a lot of mechanism to collect money. They're not like the power company that has collectors. What you can do is recover your actual damages. But that certainly doesn't incentivize employers to pay on time without being sued. Well, that's it. You know what? That's an argument for Congress. It is. Congress already answered it. If one looks at the congressional record from the 1980 amendments, Congress was very concerned with this problem. Counselor, you're right. It answered it. It just answered it in a way that is adverse to your view. I'm not sure that's true. I think the ultimate statute didn't provide us with a statutory right of action, but we have a contractual right of action. You know, and to say, well, it's just a little bit late. Depends on how much you need the money. Doesn't it? I don't know. That's maybe a good subject for a rebuttal, but let's stay on it. There are no further questions. If either of you have any questions, Mr. Thank you, Your Honor. May it please the court. My inclination is to submit our argument based on the reasoning of Judge Kopenhaver's 44-page memorandum opinion, but I did want to point out a few matters. Of course, as the court has already pointed out, the issue before the court is whether the federal common law rule regarding punitive liquidated damages provisions applies to claims like this one brought pursuant to section 301 of the federal common law. And Senior District Judge Kopenhaver correctly answered that question in the affirmative. And Judge Kopenhaver is not alone. While this court has not yet squarely decided the issue, the clear majority of the courts who have have answered this question in the same way Judge Kopenhaver did, as is evidenced by our long footnotes spanning pages 16 to 18 of our response brief. Appellants below acknowledge the application of the federal common law, as well as the two conditions for enforceability that challenge liquidated damages must meet. But what they try to do below is attempt to do what they're trying to do here. And in fact, doubling down on is diminish the potency of the federal common law's anti-penalty rule by pointing to an ERISA provision that might have permitted liquidated damages provisions like the one before by them. But critically, this is not an ERISA case. Appellants didn't sue under ERISA, nor could they. As the court's already correctly pointed out, the ERISA provision to which they point, section 506 G2, applies only to unpaid contributions. NITRO's contributions are not and were not unpaid. And they weren't just paid right before suit. They were paid as late. You say this is not an ERISA case. And I tend to agree with you that one of the most distinguished judges of our generation has said that this is an ERISA land. And I might just gently say, I'm talking about someone for whom my admiration is profound, and saying this is an ERISA land, a little bit loose. The statute is very precise on what it covers and what it doesn't. Yes, I think Your Honor is obviously referring to the Operating Engineers versus Gustafson's case, authored by Judge Posner. And in that case, of course, it was in ERISA land. There was ERISA and section 301 claims brought. That's not our case. We are not in ERISA land. And Judge Kopenhaver correctly found that for claims brought under the LMRA for contributions, section 506 G2's remedies do not apply and contractual liquidated damages may be enforced only when they're not penalties under federal common law. If Congress wants to allow punitive liquidated damages provisions in the LMRA context as well, it could do that, but it hasn't done so. So appellants are now doubling down, admitting that the lack of liquidated damages provisions at issue are punitive, but advocating for this court to craft a federal common law informed by section 506 G2 to permit the enforceability of such provisions. Well, expand a bit on the Operating Engineer in this case. You know, I think, as I recall, it really comes down to the fact that this is not an ordinary contract. This is dealing with a collective bargaining agreement. And when you delve into the rationale that was used in that case, it becomes clear, of course, 502 doesn't provide for the late contributions. But that term said the ban on liquidated damages should not extend into ERISA land, which basically is what Judge Wilkerson was alluding to. If we are in ERISA land, which means that it can be used as guidance for why it would be imported into this type of conversation, which because of the differences of contracts, that's essentially, you know, where we are right now. If we are trying to ascertain congressional intent or to determine it in terms of the definition of the common law perspective, we cannot ignore that Congress itself has a certain way. I mean, there's really no reason. I mean, if it looks like me, it would be a penalty under 502, but for ERISA. And so, you know, to not speak on it, but to put to demonstrate that the provision of liquidated damages is not a penalty in that context, at least it looks to me like operating engineers, you know, is indicating, yeah, you can these are not penalties in that kind of light. Just expand on that, maybe help me to understand the input. Since that case came up, I want to understand its input here. Sure. And I think that the result of the operating engineers case was really born from that court's perspective that the anti-penalty rule is somewhat antiquated, that parties, particularly sophisticated ones, should be able to agree on such provisions. But significantly here, the method for calculating liquidated damages was derived not from arm's length negotiation between the parties, but by the unilateral selection of the appellants. I mean, the collective bargaining agreement. But as I recall, it is less than the 20 percent that 502 has. What is the amount here? Is it 10 percent or so? It is 10 percent, Your Honor, yes. So, I mean, that's half of what Congress has allowed in that context. If we are in this so-called arisal land, I mean, that's not, that doesn't sound like to me is that unreasonable. Well, where it becomes exceptionally unreasonable, and the district court recognized this, is the parties didn't receive, the appellee didn't receive notice of these until well after the fact, and they racked up and they racked up very, very quickly. So I think, you know, we likely wouldn't be here if, you know, we were able to get notice of those matters and matters quickly. I hope I've answered your question. So you are saying we ought to address this condition preceding notice provisions for liquidated damages? Well, I don't know that you have to get there, Your Honor, but that is an underlying fact here. Yes, Your Honor. It seems like your answer hinged upon the fact you didn't know about this. And the question then arises, is that the notice, is that a condition preceding for liquidated damage to have, you know, notice of? Well, Your Honor, I believe that you should have notice. However, the court need not get there. The liquidated damages provision, as evaluated by Judge Kopenhaver and evaluated quite cogently, is actually and should be invalid. Let me just make sure I understand. So because some things can, you can come right down to where the disagreement may, and you can disagree or not agree. And if the determination is a common law and you don't look at any other provisions, whether ERISA or even the Labor Management Act or anything else, then that seems to favor your position as a penalty. But if you do go to those provisions in light of operating engineers that says, which is not controlling, but then says, you know, you look here, if you want to see how Congress was thinking, look over here at this statute, which is just like the kind of thing here, just didn't have late penalties in there, and you get guidance for it. So if it's that demarcation you're there, if one is on this side looking at ERISA, you're going to go a different way. If one's going, if you're on common law, you're going there. So it's a matter of choice. But Your Honor, even if you do look at ERISA, it was for unpaid contributions. Here. Well, and that would follow if they were seeking damage on the 502. And it's clear they're not. They're doing it on the 301. And now you're trying to determine, can you get these? And so you go back and look at ERISA to do it. And the question is, you know, can you do that? Or should you just go to common law? At least that's the way I see it. I'm not, you know, I'm just trying to posture with the issue here. And then the choice is made. I mean, as to which way you go on it. So it sounds like to me, your choice is you don't need to look at ERISA because the common law tells you what to do. And that's the end of it. And it does. And if, and the, this court has consistently applied, applied the common law in the LMRA context, it just hasn't yet added the opportunity to do so in the context of an evaluation of a legal data damages provision. So Judge Kilbanever, when looking at this matter, said, okay, I'm to apply the common law, the common law finds that liquidated damages that are penalties or penal in nature are unenforceable. And then we need to look at the, the two-part test. And in this case, appellants didn't even try to meet the two-part test for this inapplicable ERISA-based test and say it's necessary to make sure that they get paid. Well, it certainly wasn't necessary in this case because they were paid. But I think what they want is the ability to, in fact, impose this penalty or windfall if employer, if an employer happens to be a couple of days or a couple of minutes late, even though they end up $0 short. So how do we deal with situations where it's not a couple of days or a couple of minutes, but an instance of what we actually are dealing with multiple instances of it for a period of time? You know, and then the idea being is, well, you know, yeah, you can get actual damages, but if that's all you're going to get, there's no incentive for you to do anything. Those actual damages aren't going to be that much. I mean, if you don't have something like a liquidated penalty there, if you are viewing it in the ERISA perspective as to where you go, and you had mentioned, you know, I was trying to figure out this notice thing in a due process, I guess, at least you're not part of negotiations. But, you know, even a district court recognized that notice was a material fact that was disputed here, whether it was sent and received. And so, you know, that kind of takes us to a different place. And I know you're not hanging your case on that. Right. So how do we do it? Well, I think that the, so your question is, how do we ensure that the parties do? I mean, well, in this case, they... Yeah, in the instance of your client in particular, multiple times. I mean, how many times was it? Was it 14, 16, 17? I can't remember the number of times, but it was more than one or two times, more than a few minutes. And I got that point. That seems to be there, but it seems like at some point in time, something ought to happen. There ought to be some reasonableness here that allows them to undertake some enforcement provision where it isn't a collective bargaining agreement, even though you may want to use ordinary going to common law or tax, but it is a collective bargaining agreement. It is, but... And I might add just that when you're talking about correct bargaining, I mean, you can ignore it, Marissa, but a collective bargaining agreement has all kinds of restraints and impositions on it. It's not an ordinary contract at all. And maybe that's where Judge Poston was going with this thing. He said, this is not the same stuff. We're dealing with something totally different here. And this is, as I said, this fund is for to fund monies, to pay for benefits and other things there. And if you don't pay it, there's some serious consequence of what can happen, I would think. There's no question that collective bargaining agreements are important. The situation here, though, is the collective bargaining agreement referred to the fund's trust documents, which in turn promulgated the delinquent employer's procedures. Only those documents, two steps removed from the collective bargaining agreements, had this liquidated damages figure in there. It was not something that was negotiated back and forth at arm's length in the past. I mean, absolutely, collective bargaining agreements were and are incredibly important documents. There's no question about that. But where here, you know, the actual provisions that the fund is relying on are a couple of steps removed from those collective bargaining agreements that the NITRO was a party to. Is there anything further, Mr. Goodwin? Not unless the Court has any further questions. Judge Wynn, do you have further questions of Mr. Goodwin? I have no other questions. Thank you very much, Mr. Goodwin. We appreciate it. Thank you, Your Honors. Mr. Levikoff, you have some rebuttal time. I believe I have three minutes and I have three points to make. I'm going to try to relegate a minute to each of them. The first point is we've had some discussion about Judge Posner's well-written decision in Operating Engineers v. Gustafson. It's very clear. The Court was addressing both statutory claims that did cognize under Section 502 G2 of ERISA, but also contractual claims based on the provisions of the collective bargaining agreement. And the Court specifically made clear that those contractual claims were contract claims under Section 301 of the LMRA simply because, like here, the money had been paid before suit was filed. So they were purely contract-based claims for liquidated damages, nonetheless, because it's all part of ERISA land, as Judge Wynn observed. The common law rule. Not my word, Judge Posner's word, OK? Exactly right. And well, well chosen. The regular rule just didn't apply. Second point. There was some remark about the provisions of the collective bargaining agreement here not being negotiated. There is one, there were a couple of cardinal principles that really signify the different treatment that federal law applies in a collective bargaining situation than it typically applies to typical contract cases. And one of them is the language of the collective bargaining agreement governs. No ifs, ands, or buts, because everyone has to be able to rely on it. So to look at this penalty provision that is clearly in the governing documents and say, well, that's not fair because we didn't negotiate it, that that itself is contrary to fundamental labor law. Here's the third point. The two part test. Well, of course, we're not arguing about the two part test. Our fundamental position in this case is that the two part test is devoted to figuring out which liquidated damages provisions are penal and which ones aren't. Our position is not only should those provisions not be invalidated when they're penal, our position is they ought to be enforced purely because they are penal. Because if we don't have a penalty provision, employers in these multi-employer plans will do exactly what NITRO did here, pay when they feel like it, and just make sure they get the check in before they get served with a complaint. Thank you. All right, we thank you, sir. And thank you as well, Mr. Goodwin. We appreciate your argument. Sorry, we can't shake your hands, but I think you know why. And I hope you have a very pleasant afternoon. Thank you so much.  Thank you, sir.
judges: J. Harvie Wilkinson III, James Andrew Wynn, Julius N. Richardson